Gary BUBLITZ, Plaintiff,

v.

Les BROWNLEE, Acting Secretary of the Army, Defendant.[1]

No. CIV.A.01–2363(PLF).

United States District Court, District of Columbia.

March 19, 2004.

1. Pursuant to Rule 25(d)(1) of the Federal Rule of Civil Procedure, Les Brownlee, current Undersecretary of the Army and Acting Secretary of the Army, is substituted for Thomas E. White, who was sued in his official capacity and was Secretary of the Army at the time the case was filed.

Gary Rowland Myers, Gary Myers & Associates, Weare, NH, for Plaintiff.

Claes H. Lewenhaupt, United States Attorney's Office for the District of Col, Washington, DC, for Defendant.

## OPINION

PAUL L. FRIEDMAN, District Judge.

This matter is before the Court on defendant's motion to dismiss, for summary judgment, or, in the alternative, to transfer, and plaintiff's cross-motion for summary judgment. Plaintiff, a former Army reservist, has sued for injunctive relief under the Administrative Procedure Act to correct the allegedly arbitrary and capricious denial of his application by the Army Board for Correction of Military Records. Specifically, plaintiff seeks the correction of his military records to reflect dates of promotion earlier than actually occurred. Defendants argue that this suit is essentially a claim for monetary damages—the retirement pay plaintiff would receive if he had been promoted as he wished. If defendants are correct, the Court of Federal Claims has exclusive jurisdiction over this action. *See* 28 U.S.C. § 1491(a)(1). The Court holds that plaintiff's claim is in essence one for damages. The Court therefore lacks jurisdiction to address the merits of plaintiff's complaint. Accordingly, defendant's motion to transfer the action to the Court of Federal Claims is granted.

## I. BACKGROUND

Plaintiff Gary Bublitz was commissioned as a second lieutenant through the Wisconsin Army National Guard Officer Candidate School program on August 22, 1971.

In December 1972, he transferred into the Army Reserve. He was promoted to first lieutenant on January 16, 1976, and to captain on January 15, 1980. While serving the Army Reserve in Peoria, Illinois, in 1985, plaintiff applied for a position in the Active Guard Reserve Program, as an assistant professor of military science, Reserve Officer Training Corps, at the University of Utah. His application was forwarded for approval that September.

At the same time, plaintiff became eligible for a unit vacancy promotion to major. The Army Reserve uses unit vacancy boards to fill positions that are difficult to staff, by promoting junior-in-rank soldiers to the senior rank required of the position to be filled. In this case, if plaintiff were selected for the unit vacancy, he would have been promoted from captain to major approximately thirteen months before he would have been eligible for the promotion in the natural promotion cycle. Plaintiff submitted an application for the unit vacancy promotion, and he was selected by the unit vacancy board for the promotion on December 13, 1985.

Three days before, however, plaintiff had been notified that he had also been accepted to the Active Guard Reserve Program in Utah, and that his active service was to commence (as a captain) on February 15, 1986. As a result of his acceptance into the Active Guard Reserve Program, plaintiff was notified that he was no longer eligible for the unit vacancy, and his application was removed from further consideration. Plaintiff reported for his service in Utah in February 1986, and was promoted to major pursuant to the natural promotion schedule in January 1987. In January 1994, he was promoted to lieutenant colonel, again according to the natural promotion schedule.

During plaintiff's service as a lieutenant colonel, on October 1, 1996, the Reserve Officer Personnel Management Act ("ROPMA" or "the Act") took effect. That statute requires reservists at the rank of lieutenant colonel to be removed from active status after twenty-eight years of service, and requires reservists at the rank of colonel to be removed from active status after thirty years of service. See 10 U.S.C. § 14507(a), (b). Plaintiff was promoted to colonel on March 4, 1999, and according to the terms of the Act, he would be removed from active service in September 2001. All parties concede that it was upon plaintiff's promotion to colonel that he first became subject to the provisions of the Act.

At the time the Act mandated plaintiff's removal from active duty, he would have served in the reserves for thirty years, but would have served on active status for only sixteen. He thus was ineligible to serve twenty years in active status and receive active duty retirement. Active duty retirees begin receiving their pensions immediately upon retirement, rather than waiting until age sixty, as is the case for reservists without twenty years' active-duty service. Had the Act not applied to plaintiff, he would have been able to continue serving on active status as a colonel until reaching twenty years' active duty service. Plaintiff was retired pursuant to the Act on September 1, 2001.

Plaintiff alleges that the failure to promote him to major in December 1985 caused each successive promotion to occur later than it should have. According to plaintiff, he should have been promoted to colonel before October 1, 1996—the effective date of the Act. As such, the mandatory retirement provisions of the Act would not have applied to him, and he would have been able to serve long enough to receive his active-duty retirement.

Plaintiff initially brought this dispute before the Army Board for Correction of

Military Records ("ABCMR") in 1999, after his promotion to colonel, asking the Board to change his records to reflect promotions earlier than when they were actually received, thus making him eligible for an active-duty retirement. When the Board denied him relief, plaintiff filed a complaint in this Court under the Administrative Procedure Act seeking to overturn the Board's decision as arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. *See* 5 U.S.C. § 706(2)(a). On August 22, 2002, the Court granted defendant's motion to remand the action voluntarily to the ABCMR for reconsideration of its denial of relief in light of new evidence submitted by plaintiff that was not part of the original administrative record.

The ABCMR considered the new evidence on remand but reaffirmed its initial decision that the Army Reserve had acted appropriately in removing plaintiff's name from the list for possible promotion in 1985 because of his pending departure from his unit. *See* Supplemental Administrative Record ("SAR") at 3. It concluded, *inter alia*, that: (1) nomination for unit vacancy promotion is not a right, must meet the requirements of the applicable regulations, and, in plaintiff's case, would have been inconsistent with the unit vacancy selection process; (2) the Army Reserve acted properly in removing plaintiff's name from consideration based on his expected departure and entry into Active Guard Reserve Program in Utah because plaintiff would not have been available to serve in the position for which he was considered as required by regulation; and (3) his selection for the unit vacancy promotion would have defeated the stated purpose of the unit vacancy process, to staff difficult to fill positions.

*See* SAR at 4. The ABCMR further concluded that if plaintiff had not been accepted into the Army Guard Reserve Program or declined the assignment he could have sought redress from the ABCMR in 1985. *See id.*

Defendant has moved to dismiss for lack of jurisdiction or for summary judgment, or, in the alternative, for transfer to the Court of Federal Claims. According to defendant, plaintiff's suit is a suit for damages—an active-duty retirement and back pay—made to look like a suit for injunctive relief. Plaintiff disputes this characterization, saying that he wanted to serve in active duty beyond the mandatory retirement date, although he did request early retirement in April 2001.[2] He also claims that injunctive relief will give him "the dignity of having served to retirement with full ceremonial honors." Plaintiff's Renewed Cross-Motion for Summary Judgment at 5.

## II. DISCUSSION

### A. Statutes Defining the Jurisdiction of the Court of Federal Claims and the District Courts

As a sovereign, the United States may not be sued except by its consent, and *a fortiori* the government can place conditions on the circumstances under which it will consent to suit. *See, e.g., United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003); *Nichols v. United States*, 7 Wall. 122, 74 U.S. 122, 126, 19 L.Ed. 125 (1868); *Beers v. Arkansas*, 61 U.S. (20 How.) 527, 529, 15 L.Ed. 991 (1857). At issue here is one such condition: Congress's decision to require that

---

**2.** Plaintiff's initial attempt to bring this suit was dismissed for lack of ripeness because he was still serving in the reserves and therefore not eligible for retirement. He claims that his request for early retirement was an attempt to solve the ripeness problem and was not made because of a desire to leave active duty in the reserves.

certain claims against the government be brought in the Court of Federal Claims. The APA waives sovereign immunity, allowing the United States to be sued in the district courts for remedies *other* than money damages arising from an agency's unlawful action.

The Court of Federal Claims has jurisdiction over all non-tort claims *for monetary damages* against the United States. *See* 28 U.S.C. § 1491(a). For suits not exceeding $10,000, however, Congress has granted the district courts concurrent jurisdiction. *See* 28 U.S.C. § 1346(a)(2). Accordingly, plaintiffs who wish to bring non-tort suits for damages greater than $10,000 must litigate in the Court of Federal Claims, while plaintiffs seeking $10,000 or less may litigate in either the Court of Federal Claims or the district courts. Defendant claims that plaintiff seeks monetary damages in excess of $10,000. Plaintiff counters by arguing that the suit seeks equitable relief. There is no dispute, however, that if the suit were characterized as one for damages, the value of the claim would be greater than $10,000.

As previously noted, district courts have jurisdiction over suits for non-monetary damages. This Court has no jurisdiction, however, if the plaintiff's suit is essentially one for non-tort damages exceeding $10,000, regardless of whether the plaintiff has cloaked his complaint in injunctive terms. *See, e.g., Bowen v. Massachusetts,* 487 U.S. 879, 915–16, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988) (Scalia, J., dissenting); *Kidwell v. Dep't of the Army, Board for Correction of Military Records,* 56 F.3d 279, 284 (D.C.Cir.1995); *Megapulse, Inc. v. Lewis,* 672 F.2d 959, 967–68 (D.C.Cir. 1982); *Larsen v. Hoffman,* 444 F.Supp. 245, 252 (D.D.C.1977). The issue the Court faces is thus clear-cut, even if the solution is not: If plaintiff's claim is "es-sentially" one for damages, the Court is without jurisdiction; if the claim is one for injunctive relief, the Court does have jurisdiction.

## B. When Does a Plaintiff "in Essence" Seek Money Damages?

■ A plaintiff whose complaint against the United States asks for monetary damages of more than $10,000 may not pursue that claim in the district courts. *See* 28 U.S.C. § 1346(a)(2) (granting jurisdiction to the district courts over claims of $10,000 or less). The difficult jurisdictional question is determining when a complaint that requests injunctive relief will be deemed one seeking monetary damages. In this Circuit, plaintiffs have the benefit of a "bright line rule," under which complaints requesting injunctive relief generally will be taken at their word for jurisdictional purposes. *See Vietnam Veterans of Am. v. Secretary of the Navy,* 843 F.2d 528, 535 (D.C.Cir.1988).

■ The bright-line rule, however, turns out to be rather dim, for the court of appeals has recognized that not all complaints asking for equitable relief will be taken at face value. "The plain language of a complaint ... does not necessarily settle the question of Tucker Act jurisdiction." *Kidwell v. Dep't of the Army, Board for Correction of Military Records,* 56 F.3d at 284. Rather, the test is whether a complaint, "at [its] essence" seeks damages. *Megapulse, Inc. v. Lewis,* 672 F.2d at 968. To answer that question courts "look to the complaint's substance, not merely its form." *Kidwell v. Dep't of the Army, Board for Correction of Military Records,* 56 F.3d at 284. At the extreme, a complaint seeking an injunction requiring the defendant to pay the plaintiff money clearly fails the jurisdictional requirement. *See Jaffee v. United States,* 592 F.2d 712, 715 (3d Cir.1979); *Motorola, Inc. v. Perry,* 917 F.Supp. 43 (D.D.C.1996).

Where the equitable relief lacks " 'considerable value' independent of any future potential for monetary relief," *Kidwell v. Dep't of the Army, Board for Correction of Military Records*, 56 F.3d at 284 (quoting *Francis E. Heydt Co. v. United States*, 948 F.2d 672, 677 (10th Cir.1991)), or when the equitable relief requested in the complaint is " 'negligible in comparison' with the potential monetary recovery," *id.* (quoting *Hahn v. United States*, 757 F.2d 581, 589 (3d Cir.1985)), the complaint will be deemed one for damages. *See Wolfe v. Marsh*, 846 F.2d 782, 784 n. 3 (D.C.Cir. 1988) (per curiam) (stating that district courts will have jurisdiction where "a plaintiff's interest in equitable relief may far exceed his interest in a back pay award").

The court of appeals in *Kidwell* acknowledged that the correction of one's military records can be "valuable non-monetary relief" sufficient to satisfy district court jurisdiction. *Kidwell v. Dep't of the Army, Board for Correction of Military Records*, 56 F.3d at 286; *see also Wolfe v. Marsh*, 846 F.2d at 783–84 (determining that a plaintiff's request for a records change to reflect a discharge in lieu of court martial was not a suit for money damages despite the impact on back pay). *Kidwell* held that the serviceman plaintiff's suit to change his record from reflecting a general discharge to one reflecting a medical discharge was, "in essence," one for equitable relief, because of the "shame" imparted to servicemen who fail to receive honorable discharges. *Kidwell v. Dep't of the Army, Board for Correction of Military Records*, 56 F.3d at 285.

█ The court in *Kidwell* recognized, however, that the district courts will not have jurisdiction where a plaintiff casts his complaint as seeking equitable relief merely as a pretext in an attempt to avoid the Court of Federal Claims' exclusive jurisdiction. *See Kidwell v. Dep't of the Army, Board for Correction of Military Records*, 56 F.3d at 284. Plaintiffs "may not, by creatively framing their complaint, circumvent a congressional grant of exclusive jurisdiction." *Heller, Ehrman, White & MacAuliffe v. Babbitt*, 992 F.2d 360, 363 (D.C.Cir.1993); *see also Bowen v. Massachusetts*, 487 U.S. at 915–16, 108 S.Ct. 2722 (Scalia, J., dissenting).

█ The Court appreciates the important considerations that underlie the use of the bright-line, strict-pleading rule. The rule, in most cases, allows for simple, definitive jurisdictional inquiry that starts and ends with the four corners of the complaint. *See Wolfe v. Marsh*, 846 F.2d at 785 n. 4. A threshold inquiry into the plaintiff's motivation or the real importance to him or her of the equitable or injunctive relief ostensibly sought might require the Court to involve itself in credibility assessments and possibly even hold hearings at the jurisdictional stage of litigation. And where the monetary worth of equitable relief or the relationship of equitable relief to damages is in dispute, an appellate court might have to consult matters outside the record to resolve the dispute and thereby settle the question of jurisdiction. *See Kidwell v. Dep't of the Army*, 56 F.3d at 286 (stating that "we could refuse jurisdiction only by going outside the record . . ."); *Vietnam Veterans of Am. v. Sec'y of the Navy*, 843 F.2d at 534 (requiring a court to go outside the record to determine its jurisdiction would "complicate the jurisdictional issue."). The limitations on the "strict pleading rule," *Wolfe v. Marsh*, 846 F.2d at 785 n. 4, balance these practical considerations against permitting pretextual suits for injunctions.

None of those considerations, however, eliminates this Court's duty to determine whether the complaint in this case "in

essence" seeks money damages. *Kidwell, Wolfe,* and *Vietnam Veterans* all caution that the face of the complaint normally should govern, but there remains the obligation to determine the essence of the complaint in cases where the requested equitable relief may lack substantial value, or may serve as a pretext or surrogate for a plaintiff's real claim—monetary relief.

One final quirk of doctrine deserves mention. The court of appeals has stated that where monetary benefits would flow to the plaintiff not "from the district court's exercise of jurisdiction, but from the structure of statutory and regulatory requirements governing compensation when a servicemember's files change," the monetary benefit will not defeat jurisdiction in this Court. *Kidwell v. Dep't of the Army,* 56 F.3d at 285–86. This statement, however, cannot mean that every change of military records will support district court jurisdiction where the change will effect a monetary benefit to the plaintiff. To so hold would be to eviscerate the court of appeals' earlier statement requiring the district court to weigh the relative importance of the monetary recovery against the equitable relief, and to hold against jurisdiction where the injunctive relief sought is of "negligible" worth or lacks "considerable value." *Id.* at 284 (quotation marks omitted). Instead, what the court of appeals meant was simply that the district court will not lose jurisdiction over a claim for injunctive relief where that injunctive relief triggers the payment of money, *so long as the injunctive relief is of sufficient importance relative to the monetary award to support jurisdiction.* See *Wolfe v. Marsh,* 846 F.2d at 784 n. 3.

## C. Bublitz's Claim

Plaintiff is retired from the service, although he filed an action to change the date of his promotions before he retired. He seeks a change to his records to reflect earlier promotions; he does not seek a change in his last-received rank. His complaint does not, in so many words, ask for monetary relief. Yet it is alleged by the government and unrefuted by plaintiff that if plaintiff's suit were to be successful, the effect of the injunctive relief would be a large monetary payout.

In response to the government's argument that his suit is essentially one for damages, plaintiff states only that the equitable relief will give him "the dignity of having served to retirement with full ceremonial honors." Plaintiff's Renewed Cross–Motion for Summary Judgment at 5; *see also* Plaintiff's Consol. Mem. in Response to Defendant's Consol. Mem. in Response to Plaintiff's Opp. to Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment and Opp. to Plaintiff's Cross Motion for Summary Judgment at 3 ("Plaintiff is seeking retirement."). Placed in juxtaposition to the government's uncontested assertion that plaintiff's constructive service relief would by itself exceed $60,000, Mem. of Points and Authorities in Support of Defendant's Renewed Motion to Dismiss, Transfer, or, for Summary Judgment at 5, plaintiff's dignity interest in changing the dates of his service is quintessentially "insubstantial."

The Court does not, of course, suggest that being promoted at an early date is of no importance, even to a serviceman who has eventually gained the promotion and since retired. *See Bliss v. England,* 208 F.Supp.2d 2, 7 (D.D.C.2002) (noting the plaintiff's position that a military rank has a "value above and beyond mere remuneration"). *Kidwell* recognized that a military record reflecting a general discharge caused sufficient "stigma" independent of any monetary claim to support district court jurisdiction. *See Kidwell v.*

*Dep't of the Army, Board for Correction of Military Records,* 56 F.3d at 286. As this Court noted in *Bliss,* however, a complaint about the timing of one's promotions is not analogous. "While a higher rank may carry with it more prestige, the plaintiff would have difficulty arguing that the difference in prestige is tantamount to the stigma caused by a less than honorable discharge." *Bliss v. England,* 208 F.Supp.2d at 7 n. 2. To support district court jurisdiction, the injunctive relief must not merely have value *simpliciter,* but it must also be valuable *relative to the monetary dispute driving the injunctive claim.* Plaintiff cannot meet this standard. Whatever value plaintiff's pride would take in having his military record show a promotion several months before it actually occurred, that value is far outweighed by the monetary value of the retirement for which he asks.

For the foregoing reasons, defendant's renewed motion to dismiss, transfer, or for summary judgment is granted in part and denied in part. Plaintiff's renewed cross-motion for summary judgment is denied. The case is transferred to the Court of Federal Claims pursuant to 28 U.S.C. § 1631. A separate Order consistent with this Opinion shall be issued this same day.

SO ORDERED.

### ORDER

For the reasons stated by separate Opinion issued this same day, it is hereby

ORDERED that Defendant's Renewed Motion to Dismiss, Transfer, or, for Summary Judgment [25] is GRANTED in part and DENIED in part; it is

FURTHER ORDERED that Defendant's Renewed Motion to Dismiss [25–1] is DENIED; it is

FURTHER ORDERED that Defendant's Renewed Motion to Transfer [25–2] is GRANTED; it is

FURTHER ORDERED that Defendant's Renewed Motion for Summary Judgment [25–3] is DENIED as moot; it is

FURTHER ORDERED that Plaintiff's Renewed Cross Motion for Summary Judgment [29] is DENIED as moot; it is

FURTHER ORDERED that this action shall be TRANSFERRED to the Court of Federal Claims; and it is

FURTHER ORDERED that the Clerk of the Court shall transfer all papers in this proceeding, together with a certified copy of this Opinion and Order, to the Court of Federal Claims.

SO ORDERED.